# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CYNTHIA C. KUNERT, | |
| Plaintiff, | No. C08-4042-PAZ |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the court for judicial review of the defendant's decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* The plaintiff Cynthia C. Kunert filed her application on December 21, 2004, alleging a disability onset date of January 10, 1996.[1] Her claim was denied initially and on reconsideration. She had a hearing before an Administrative Law Judge ("ALJ") on April 8, 2006. On September 27, 2006, the ALJ issued his decision, finding Kunert could return to her past relevant work as a store manager, and she therefore was not disabled at any time through December 31, 2000, her date last insured.

Kunert filed a timely Complaint in this court , seeking judicial review of the ALJ's ruling. She argues the ALJ failed to give appropriate weight to the reports and testimony of Paul D. Anderson, D.O., who examined Kunert both before and after her date last insured. She further argues the ALJ erred in discounting her subjective complaints. *See* Doc. No. 12. On June 17, 2008, with the parties' consent, Judge Mark W. Bennett

---

[1]Kunert filed a previous application for benefits alleging the same disability onset date. The application was denied initially and on reconsideration, and Kunert did not appeal. Although the ALJ did not expressly state he was reopening the prior application, he considered Kunert's claim dating back to the January 10, 1996, alleged disability onset date, and the Commissioner similarly addressed his arguments to Kunert's claim back to that date. Therefore, the court's review will consider Kunert's claim back to her alleged disability onset date of January 10, 1996.

transferred the case to the undersigned for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The issue before the court is whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court considers the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Kunert was born in 1957, making her forty-nine years old at the time of her ALJ hearing. She claims she is disabled due to severe lower back pain that prevents her from standing or sitting for long periods of time, walking very far, visiting friends, riding in a car for more than a few minutes at a time, bending over, and performing some self-care functions such as shaving her legs. She claims she becomes fatigued after twenty minutes of almost any activity, and she is in constant pain that is so great, she sometimes does not want to go on living.

In 1988, Kunert was diagnosed with a herniated intervertebral disc at L4-5, and she underwent a partial laminectomy and discectomy at L4-5 on January 27, 1989. She was discharged in good condition on January 31, 1989, with instructions to wear a lumbar support for two weeks, increase her walking activity, and avoid twisting, lifting, bending, or any prolonged positions until her six-week follow-up. In addition, she was to remain off work until her follow-up appointment. She continued to have problems, and in November 1990, she underwent excision of a recurrent herniated disc at L4-5. On January 25, 1991, a doctor indicated Kunert should not work for six weeks due to ongoing physical therapy. As of March 1991, Kunert was reporting no back pain and stated she had not felt so good in years. She was having some intermittent pain in her right leg upon prolonged sitting, but no numbness, tingling, or weakness in her legs. She had full range

of motion upon forward bending, and normal reflexes. She was released to return to work as of March 14, 1991, with instructions to exercise regularly to maintain the good result from her surgery. A.R. 159.

In October 1991, Kunert saw a doctor complaining of increased back pain over the previous two weeks, "present all of the time, radiating into the lateral aspects of her thighs, across her anterior knees and down to the tops of her feet." A.R. 229. She stated the back pain worsened with movement. She obtained some relief with ice packs and Percocet. Prior to the onset of her back pain, she had been doing Nautilus workouts three times weekly and had been taking no medications. Examination showed positive straight leg raising at thirty degrees bilaterally, limited ranges of motion of her back, loss of "a lot of her lordosis of the lumbar spine," and difficulty moving from chair to exam table. *Id.* She was given a program of exercises to do twice daily at home, pain medication was prescribed, and she was advised to continue using ice packs. In addition, she was directed to "get bedrest" for one week until her next follow-up exam. A.R. 228. Kunert failed to appear for her one-week follow-up.

The next treatment note in the record is from March 18, 1993; however, it appears Kunert had received care in the interim between October 1991 and March 1993, because she was taking Darvocet and high-dose ibuprofen regularly for "severe back pain." A.R. 228. She also had a prescription for Percodan, but indicated she did not like to take the drug. The doctor prescribed a smoking cessation medication, Flexeril three times daily, and Motrin 800 mgs two to three times daily. *Id.*

On May 1, 1993, Kunert saw a chiropractor "for examination and treatment of injuries sustained when lifting a box into the back of a lady's car." A.R. 198. She complained of rapidly worsening low back and left leg pain that she rated at 9 on a 10-point scale. She stated she had "stabbing pain along the left buttock, left lateral thigh, into the shin, and into the left foot and toe." *Id.* She was obtaining no relief from pain medications, and stated that she was unable to lift, walk, sit, or stand for longer than a

3

couple of minutes, "and her social life and traveling [had] come to a stop." *Id.* On examination, she had palpable muscle pain and soreness at L4-L5-S1, and restricted range of motion on extension and left bending. The doctor indicated Kunert had "damaged the facet and irritated her previously damaged lumbar spine and disc area." *Id.*

Kunert returned to see the chiropractor on May 10, 13, 14, and 18, 1993, and after these treatments, she indicated her leg pain was subsiding, she had better flexibility and range of motion, and she was "80% better." A.R. 197.

In January 1994, Kunert reported that she had stopped smoking successfully using Habitrol patches. She was having symptoms of depression, her weight had increased thirty pounds (to 278 pounds), and she had noticed increasing back pain. She was diagnosed with "Endogenous depression," and nicotine craving secondary to the depression. The doctor prescribed Prozac, an exercise program, and a weight loss diet. A.R. 227.

The next record evidence of Kunert seeking medical treatment is a doctor's note dated March 26, 1996, indicating Kunert's prescription for Percodan had been refilled for treatment of her lower back pain. Kunert called the office two days later to report the medication was not working. She was told to get bed rest and make an appointment to be seen. She was seen on April 11, 1996, with complaints of worsening back pain for a few weeks. She stated she had done well after her 1990 surgery, but her back began hurting again a couple of years later and had worsened gradually since then. She stated she had "severe low back pain all the way across the low back [and] buttocks, down the left side of the left leg to the knee." A.R. 226. She was taking Percocet or Percodan occasionally, as needed. On examination, she had positive straight leg raising on the left at thirty degrees, and "marked lumbar tenderness and paravertebral lumbar muscle spasm." *Id.* She was referred to a spine center for further evaluation.

Her evaluation at the spine center included x-rays, which showed "collapse of the disc at L4-5 and L5-S1," and "impingement of the left L5 nerve root." A.R. 236. These findings were confirmed by an MRI, and surgery was recommended. On May 23, 1996,

Kunert underwent Anterior Spinal Fusion of L3-4, L4-5, and L5-S1; Posterior Spinal Reconstruction at L3-4, L4-5, and L5-S1; Decompression "re-do" at L4-5; CD Instrumentation; and Bone Graft. A.R. 234. Postoperatively, she experienced problems with leg cramping, and she took narcotic pain medications for pain at the graft site. She was walking gradually longer distances and reported her brace was fitting well. Doctors continued to advise her to stop smoking.

By August 1996, Kunert was off the narcotics and was taking Tylenol for pain; however, this was not helping her leg pain. X-rays indicated her screws were loosening. He noted Kunert's brace was somewhat loose due to her weight, and he showed her how to cinch it tighter. He advised her to quit smoking, and to wear her brace tighter and all of the time.

On November 25, 1996, at the request of Disability Determination Services, Kunert underwent a complete orthopedic examination by John Koester, D.O., at Spencer Municipal Hospital. Dr. Koester noted that due to Kunert's thoracic brace and the condition of her back, she had "significant functional deficit in terms of physical mobility," limiting her employment options. He noted the following findings and opinions:

> Specifically, [Kunert] would be unable to perform a job that would require squatting, bending forward, kneeling or in any other way deviating from simply sitting or standing. It appears that she is unable to sit or stand in any one position for more than twenty minutes or so before needing [to] move around again. She would not be able to carry more than perhaps 15-20 pounds and that would only be if she could lift it in a standing position. It appears that there is no deficit in terms of use of her upper extremities so that she would be able to perform a task with her upper extremities which required either fine or gross motor skills. There is also no apparent deficit in terms of vision, hearing or speaking. Traveling would be difficult in that she does not tolerate sitting in one position for very long. I do not appreciate any specific restriction of work environment in terms of dust, fumes or

5

> temperature. She would not tolerate a work environment which required normal physical mobility as discussed above.
>
> In my judgment, the patient's employment options at this time would be limited because of her restricted mobility. On the other hand, it would appear that if a type of job could be found which would allow her to alternatively sit and stand as she desired and which perhaps emphasized use of upper extremities that this would be a good option for her, that it could be preferable to the somewhat depressed feeling that she gets from sitting at home day after day relatively inactive. I should add that it is apparent that her recovery from this last back surgery is not complete. I did speak with the office nurse for her orthopedic surgeon in the Twin Cities and they are currently requesting another set of lumbosacral spine x-rays which they will review and use as a basis for planning any further visits in their office. It is my understanding that the plastic brace is not to be permanent and that its discontinuation is dependent upon an assessment of the degree of healing based upon her lumbosacral spine x-rays. I would suggest that her orthopedic surgeon . . . could be a source of information regarding her ultimate prognosis.

A.R. 258-59.

On March 11, 1997, Kunert saw her family doctor for follow-up of her back pain. She stated she had just been released from her body splint the previous month. She had no new complaints regarding her back, however; rather, she had resumed smoking and was gaining weight, and she wanted to discuss weight loss measures. She was noted to be morbidly obese with a body mass index greater than 40. She was started on medication for weight loss and GERD, with monthly follow-up. Her weight loss medications were refilled regularly. She saw her doctor several times in July 1997, for gastrointestinal problems, with no notations that she was complaining of back pain. In February 2000, she saw a doctor because she had received a mailing concerning possible heart complications from the weight loss medication she took in 1997. She indicated she was not having any real problems at that time.

6

The record contains medical records from 2001 through 2006, that may be relevant to a later claim for benefits. However, given Kunert's date last insured of December 31, 2000, the court finds those records are irrelevant to consideration of her current application for benefits.

At the ALJ hearing, Kunert offered the testimony of Paul Dean Anderson, D.O., a psychiatrist who had examined Kunert "sometime in the 1996 time frame," at the request of the state agency in connection with her previous application for benefits" A.R. 531. He re-examined Kunert prior to the August 8, 2006, ALJ hearing. He noted Kunert was taking Wellbutrin, and he found her to be "in severe pain and very depressed, secondary to the pain." *Id.* Dr. Anderson indicated his diagnosis had not changed significantly since 2006. He noted Kunert had undergone gastric bypass surgery and had lost over 200 pounds in an effort to improve her back pain, but her pain was ongoing. He suggested Kunert likely had been treated with antidepressant medications for a number of years. In his opinion, Kunert was just as limited by her mental impairments in December 2000 as she was in August 2006. A.R. 531-36.

The ALJ asked Vocational Expert Tom Audet to consider a person of younger age with a high school education, Kunert's work history, and medically-determinable impairments that cause the limitations alleged by Kunert. The VE indicated such an individual could not return to any of Kunert' past work, and would be incapable of doing any other work because of her need to change positions constantly.

The ALJ asked the VE to consider the same individual with the ability to lift or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk and/or sit for about six hours of an eight-hour day, with normal breaks; push/pull without limitation; perform postural activities occasionally, with no climbing of ladders, ropes, or scaffolds; and with no manipulative, visual, communicative, or environmental limitations. The VE indicated this individual could return to Kunert's past job as a liquor store manager, as the job is described in the *Dictionary of Occupational Titles*, but not as Kunert had performed

7

the job. He indicated the individual also could return to Kunert's past job as a chick sexor, as well as performing many other unskilled, light jobs, such as cashier or sales attendant.

The ALJ found Kunert had not engaged in substantial gainful activity at any time relevant to her application. He found her to have severe impairments including lumbar degenerative disk disease, obesity, and history of back problems and surgeries as discussed above in this opinion. He also found Kunert had been diagnosed with "Major Depression, recurrent, probably secondary to a physical condition." A.R. 19. However, he relied on a state agency consultant's opinion that with proper treatment, Kunert's depression would not have been significantly limiting for twelve months or more. The ALJ gave no weight to Dr. Anderson's opinion regarding Kunert's mental limitations prior to December 2000, noting Kunert had not sought treatment from any mental health professional from May 1996 through December 2000. The ALJ found Dr. Anderson's opinions regarding Kunert's condition and medications during that time period to be "completely speculative." A.R. 20.

The ALJ concluded that although Kunert has severe physical impairments, her impairments, singly or in combination, do not meet the Listing level of severity. He assessed Kunert's residual functional capacity consistent with the second hypothetical question he posed to the VE. *See* A.R. 21.

The ALJ found Kunert's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms not to be fully credible, noting the record contains "several material inconsistencies and incongruities . . . between [Kunert's] testimony, the medical evidence and the record as a whole." *Id*. Specifically, the ALJ cited the following points that he found eroded the credibility of Kunert's allegation of disability during the time period from her alleged disability onset date through December 31, 2000:

- Most of Kunert's treatment of her degenerative disk disease took place prior to her alleged disability onset date of January 10, 1996. After her January 1989 surgery,

she reportedly "had a relief of symptoms for 21 months until her symptoms recurred." A.R. 22.

- Kunert reported increasing pain radiating down her left leg in May 1993. She had surgery in May 1996, but then had no further treatment through December 2000. She was on no medications, either prescribed or over-the-counter, and had no other treatment during that time period, indicating her surgery was successful.

- Kunert's allegation that her activities of daily living were severely limited in 1996 is not verified by any objective evidence.

- Kunert had low earnings in the years prior to her alleged onset date, "rais[ing] a question as to whether [her] continuing unemployment is actually due to medical impairments." *Id.*

- Kunert testified that her obesity had not resulted in any limitations being placed on her by her doctors.

- At her consultative examination in November 1996, Kunert admitted she had less pain since her surgery and was not taking any type of pain medications. "The physician concluded the claimant would have to change position every 20 minutes and could not carry more than 15-20 pounds." A.R. 23. The ALJ noted he would have given the consulting physician's opinion more weight if Kunert had obtained further treatment during the relevant time period, or if she had been taking pain medications. *Id.*

The ALJ concluded that Kunert's "past relevant work as a store manager did not require the performance of work-related activities precluded by [her] residual functional capacity," and Kunert therefore was not disabled at any time through her date last insured. *Id.*

In her brief to this court, Kunert raises a single argument, to-wit: that Dr. Anderson's reports and hearing testimony "constitute the best and most convincing evidence when viewing the record as a whole that [Kunert] has been disabled since her

third back surgery in May of 1996," and the record does not contain substantial evidence to support the ALJ's decision. Doc. No. 12, p. 5; *see id.*, pp. 5-7. She further argues the fact that she seldom saw a doctor between 1997 and 2000 is not inconsistent with her description of her limitations. *Id.*, p. 7.

The court concurs in the ALJ's characterization of Dr. Anderson's opinion in August 2006, as "completely speculative." The ALJ properly relied on Kunert's failure to seek mental health treatment from 1996 through 2000, as evidence that her mental health symptoms were not as disabling as she alleges. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *see also Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (citing *Harwood v. Apfel*, 186 F.3d 1039, 1045 (8th Cir. 1999); *Black v. Apfel*, 143 F.3d 383, 386-87 (8th Cir. 1998)). Although the record indicates Kunert's condition may have become disabling in the years that have elapsed since her date last insured, the court finds substantial evidence supports the Commissioner's decision that Kunert was not disabled prior to her date last insured.

Accordingly, the Commissioner's decision is **affirmed**, and judgment will be entered in favor of the Commissioner and against Kunert.

**IT IS SO ORDERED.**

**DATED** this 8th day of April, 2009.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT